STATE v. NETCLIFF

[116 N.C. App. 396 (1994)]

---

STATE OF NORTH CAROLINA v. DAVID LEWIS NETCLIFF

No. 9312SC1084

(Filed 20 September 1994)

## 1. Constitutional Law § 331 (NCI4th)— pre-indictment delay—no denial of speedy trial

The trial court did not err in denying defendant's motion to dismiss for denial of a speedy trial in violation of N.C.G.S. § 15A-954(a)(3), since the delay in this case was a pre-indictment delay which protected an undercover investigation; defendant failed to show both actual and substantial prejudice from the pre-indictment delay; the only prejudice defendant alleged related to the passage of time, but prejudice is not presumed simply upon a showing of a lengthy delay; and defendant failed to show that the delay was intentional on the part of the State in order to impair

STATE v. NETCLIFF

[116 N.C. App. 396 (1994)]

defendant's ability to defend himself or to gain tactical advantage over defendant.

**Am Jur 2d, Criminal Law §§ 654 et seq.**

2. **Criminal Law § 1284 (NCI4th)— habitual felon—sufficiency of indictments**

The trial court properly denied defendant's motion to dismiss habitual felon counts where the indictments charging defendant as an habitual felon were separate from the indictment charging defendant with the principal felony; the indictments set forth the date that the prior felony offenses were committed, the name of the state or other sovereign against whom the felony offenses were committed, the dates that the pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place; and defendant had previously been found guilty of three distinct felonies. Convictions for felony murder and for two escapes while serving the sentence for murder could properly serve as the underlying felonies supporting defendant's conviction as an habitual felon.

**Am Jur 2d, Habitual Criminals and Subsequent Offenders §§ 20, 21.**

**Form and sufficiency of allegations as to time, place, or court of prior offenses or convictions, under habitual criminal act or statute enhancing punishment for repeated offenses. 80 ALR2d 1196.**

3. **Evidence and Witnesses § 1782 (NCI4th)— requiring defendant to exhibit tatoo to juror—admissibility to corroborate identification testimony**

The trial court did not err in forcing defendant to exhibit to the jury a tatoo on his arm, since the trial judge was simply allowing the exhibition of the tatoo for the purpose of corroborating a witness's identification of defendant.

**Am Jur 2d, Evidence § 951.**

**Propriety of requiring criminal defendant to exhibit self, or perform physical act, or participate in demonstration, during trial and in presence of jury. 3 ALR4th 374.**

Appeal by defendant from judgments entered 10 June 1993 by Judge E. Lynn Johnson in Cumberland County Superior Court. Heard in the Court of Appeals 30 August 1994.

*Attorney General Michael F. Easley, by Assistant Attorney General Julia F. Renfrow, for the State.*

*Walter T. Johnson, Jr. for defendant-appellant.*

JOHNSON, Judge.

Four cases against defendant, David Lewis Netcliff, were consolidated for trial at the 7 June 1993 session of Cumberland County Superior Court. In case Nos. 92CRS27793 and 92CRS27794, defendant was indicted and charged for conspiracy to traffic a controlled substance. In case No. 92CRS27795, defendant was indicted and charged with the offense of trafficking in a controlled substance by possession, sale and delivery of cocaine. In case No. 92CRS27796, defendant was indicted and charged with a second count of trafficking in a controlled substance by possession, sale and delivery of cocaine. Defendant was also charged in each of four special indictments as an habitual felon pursuant to North Carolina General Statutes § 14-7.1 (1993).

Evidence for the State presented at trial tended to show the following: From approximately May 1988 until November 1990, the Investigative Grand Jury Task Force of Cumberland County conducted undercover narcotics operations in the Fayetteville, North Carolina area. On 19 July 1989, Special Agent Phil Sweatt was working undercover as a drug dealer, and agreed to meet Jorge Segarra at the A & H Cleaners on Murchison Road in Fayetteville around 6:00 p.m. to purchase two ounces of cocaine. When Agent Sweatt arrived at the cleaners, Segarra introduced him to defendant, a person named David. Agent Sweatt did not know defendant's last name, but saw that defendant had the word "Margaret" tattooed on his left arm. Agent Sweatt and defendant briefly discussed details of a cocaine deal. The men then drove to an apartment complex to pick up the cocaine. When they arrived at the apartment complex, Jerry Johnny Brown drove up in a Saab; defendant and Agent Sweatt stepped into the car with Brown where they exchanged money and two clear plastic bags containing cocaine. Brown handed the cocaine to Agent Sweatt and defendant confirmed the price. Agent Sweatt gave $2,200.00 to defendant who then gave $1,850.00 to Brown. Before leaving, defend-

STATE v. NETCLIFF

[116 N.C. App. 396 (1994)]

ant gave Agent Sweatt a phone number where he could be reached in case Agent Sweatt wanted to make another purchase.

On the afternoon of 28 July 1989, Agent Sweatt called the phone number and arranged with defendant to purchase three ounces of cocaine. A meeting was scheduled for 4:00 or 4:30 p.m. later that day at the Barbeque House on Murchison Road in Fayetteville. When Agent Sweatt arrived at the Barbeque House, defendant was standing outside and motioned for Agent Sweatt to pull over into the Kemplate Beauty Shop parking lot. Defendant approached Agent Sweatt's car and sat down in the front seat before telling Agent Sweatt that he had to go inside the beauty shop to find out when the cocaine would arrive. While defendant was inside, Agent Sweatt saw a truck drive up and saw Jerry Johnny Brown step out of the truck and go inside the beauty shop. Agent Sweatt noticed that the Saab which Brown had driven on 19 July 1989 was in the parking lot. Defendant came out of the beauty shop and told Agent Sweatt to follow Brown and defendant, who were now in the Saab, to Bain Drive. When they arrived at Bain Drive, Agent Sweatt got out of his car and got into the Saab with Brown and defendant. Brown then handed Agent Sweatt a clear plastic bag with three plastic bags of cocaine inside. Defendant took $3,000.00 from Agent Sweatt as payment for the cocaine. The bags of cocaine which Agent Sweatt obtained during these transactions were later analyzed by Special Agent J. D. Sparks, a forensic chemist with the State Bureau of Investigation, and found to be seventy to seventy-five percent cocaine in hydrochloride form.

The Investigative Grand Jury did not identify defendant by his full name until the summer of 1991 when Jerry Johnny Brown was apprehended. On 20 August 1991, Agent Sweatt, now employed by the Richmond County Sheriff's Department, first identified defendant as the person from whom he purchased cocaine on 19 July 1989 and 28 July 1989; Agent Sweatt recognized defendant from a photographic lineup arranged by Special Agent Mark Francisco. Defendant was apprehended in New Jersey and extradited to North Carolina.

The jury returned a guilty verdict in each case and the trial judge adjudicated defendant as an habitual felon and consolidated the convictions for judgment, sentencing defendant to two consecutive life terms and ordering defendant to pay fines. Defendant appealed to our Court.

[1] Defendant first argues on appeal that the trial court committed reversible error in denying defendant's motion to dismiss pursuant to North Carolina General Statutes § 15A-954(a)(3) (1988).

North Carolina General Statutes § 15A-954(a)(3) states:

(a) The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:

. . .

(3) The defendant has been denied a speedy trial as required by the Constitution of the United States and the Constitution of North Carolina.

Defendant argues that "[d]efendant Netcliff was not actually served with [the warrants against defendant issued December 1991] until July of 1992, three years after the alleged illegal drug transactions." Defendant further contends "that the State intentionally delayed issuing the indictment in order to impair his ability to prepare a formidable defense and [in order] to gain an advantage in the prosecution of their case against him."

We note initially that the case *sub judice* deals with a *preindictment* delay. *United States v. Lovasco*, 431 U.S. 783, 52 L.Ed.2d 752, *reh'g denied*, 434 U.S. 881, 54 L.Ed.2d 164 (1977) involved a preindictment delay of eighteen months, and "[t]he Court held the Speedy Trial Clause of the Sixth Amendment was not applicable, as it applied only to delay following indictment, information or arrest. [The remedy for the defendant in *Lovasco* was] pursuant to the due process clause of the Fifth and Fourteenth Amendments." *State v. Davis*, 46 N.C. App. 778, 781, 266 S.E.2d 20, 22 (1980). The United States Supreme Court in *Lovasco* noted that "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and . . . the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 790, 52 L.Ed.2d at 759. The preindictment delay in *Lovasco* was because of investigation by the government before seeking indictments. The Court held that "investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused[.]'" 431 U.S. at 795, 52 L.Ed.2d at 762, *quoting United States v. Marion*, 404 U.S. 307, 324, 30 L.Ed.2d 468, 481 (1971). The Court further held that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 52 L.Ed.2d at 763.

Based on *Lovasco*, our Court in *State v. Davis*, 46 N.C. App. 778, 266 S.E.2d 20, *disc. review denied*, 301 N.C. 97 (1980) held that for a defendant "to carry the burden on his motion to dismiss for prein-

dictment delay violating his due process rights pursuant to the Fifth and Fourteenth Amendments, he must show both actual and substantial prejudice from the preindictment delay *and* that the delay was intentional on the part of the state in order to impair defendant's ability to defend himself or to gain tactical advantage over the defendant." *Davis*, 46 N.C. App. at 782, 266 S.E.2d at 23. Defendant has not carried his burden on the motion to dismiss on either of these showings. Defendant has failed to show both actual and substantial prejudice from the preindictment delay; the only prejudice defendant has alleged relates to the passage of time. The passage of time is inherent in any preindictment delay situation, and we note that prejudice is not presumed simply upon a showing of a lengthy preindictment delay. *See State v. McKoy*, 303 N.C. 1, 277 S.E.2d 515 (1981). Further, defendant has failed to show that delay was intentional on the part of the State in order to impair defendant's ability to defend himself or to gain tactical advantage over defendant. Defendant states only that "[t]he State contends that the delay was necessary in order to protect the identity of the undercover operatives and to maintain the integrity of their ongoing undercover operation. . . . [T]here is no indication that the investigation continued beyond the alleged purchases which took place in July of 1989[.]" To the contrary, we note that the trial judge found that the undercover investigation continued through the end of 1990. As such, we find that the trial court properly denied defendant's motion to dismiss as to this assignment of error.

[2] Defendant next argues that the trial court committed reversible error in overturning defendant's motion to dismiss the felon counts. Defendant notes that he had a 1983 felony murder conviction, and then had two escape convictions which are ordinarily misdemeanor offenses but became felony offenses pursuant to statute because at the time of the escape, defendant was serving a sentence for a felony conviction. *See* North Carolina General Statutes § 14-256 (1993). Defendant claims that using these three convictions as prior "felony" convictions is a violation of the double jeopardy clause of the United States Constitution and the North Carolina Constitution because the State "used the same conviction to convert the two escape offenses into felonies in order that they might satisfy the two additional felony convictions needed to charge [d]efendant . . . with being a habitual felon." We disagree.

We first note that North Carolina General Statutes § 14-7.1 *et seq.*, our habitual felon statute, is clearly constitutional. *See State v. Todd,*

313 N.C. 110, 326 S.E.2d 249 (1985). North Carolina General Statutes § 14-7.3 (1993) reads in pertinent part:

> An indictment which charges a person who is an habitual felon within the meaning of G.S. 14-7.1 with the commission of any felony under the laws of the State of North Carolina must, in order to sustain a conviction of habitual felon, also charge that said person is an habitual felon. The indictment charging the defendant as an habitual felon shall be separate from the indictment charging him with the principal felony. An indictment which charges a person with being an habitual felon must set forth the date that prior felony offenses were committed, the name of the state or other sovereign against whom said felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place. . . .

In the instant case, the indictments charging defendant as an habitual felon were separate from the indictment charging defendant with the principal felony. These indictments set forth the date that the prior felony offenses were committed, the name of the state or other sovereign against whom the felony offenses were committed, the dates that pleas of guilty were entered to or convictions returned in said felony offenses, and the identity of the court wherein said pleas or convictions took place. Defendant had previously been found guilty of three distinct felonies. One felony was for second degree murder, and two felonies were for his two escape convictions pursuant to North Carolina General Statutes § 14-256. We find the trial court properly overturned defendant's motion to dismiss these habitual felon counts.

Defendant next contends the trial court erred by overruling defendant's motion in limine regarding statements made by defendant during his transportation from New Jersey to North Carolina. We have reviewed these statements and find that they were not prejudicial to defendant. N.C.R. Evid. 403.

**[3]** Defendant next argues the trial court committed reversible error in forcing defendant to exhibit to the jury a tatoo on his arm, but not scars on his hand. We note that the trial judge was simply allowing the exhibition of the tatoo for the purpose of corroborating witness Agent Sweatt's identification of defendant. Defendant's argument is meritless.

IN RE CARR

[116 N.C. App. 403 (1994)]

Defendant next assigns that the trial court committed reversible error in allowing witness Agent Sweatt and witness April Sweatt to testify about the out of court identification of defendant. After a review of the testimony presented at trial, we find that this argument is without merit.

Finally, defendant asserts the trial court committed reversible error in allowing witness Van Parker to testify about why he did not take a picture of the person identified as the defendant. We agree with the trial judge and find this was relevant, non-prejudicial evidence. *See* N.C.R. Evid. 402 and 403.

No error.

Judges GREENE and LEWIS concur.