STATE v. BLACKWELL

[228 N.C. App. 439 (2013)]

STATE OF NORTH CAROLINA
v.
DENNIS O'KEITH BLACKWELL

No. COA12-1472

Filed 6 August 2013

1. **Jury—deliberations—deadlocked—no coerced verdict**

The trial court did not coerce the jury into reaching a verdict in a drugs case in violation of defendant's right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution. Defendant failed to cite any authority suggesting that a jury's indication that it may be deadlocked required the trial court to immediately declare a mistrial.

2. **Constitutional Law—effective assistance of counsel—due process—denial of motion for continuance**

The trial court did not violate defendant's constitutional rights to due process and effective assistance of counsel in a drugs case by denying his motion for a continuance. Defendant failed to explain how a period of approximately two months was insufficient time to prepare for a second trial based on the same straightforward facts.

3. **Sentencing—habitual felon—not cruel and unusual punishment**

Defendant's enhanced sentence as a habitual felon did not constitute cruel and unusual punishment.

Appeal by defendant from judgment entered 23 May 2012 by Judge Paul C. Ridgeway in Person County Superior Court. Heard in the Court of Appeals 22 April 2013.

*Roy Cooper, Attorney General, by David J. Adinolfi II, Special Deputy Attorney General, for the State.*

*Brock, Payne & Meece, P.A., by C. Scott Holmes, for defendant-appellant.*

DAVIS, Judge.

Dennis O'Keith Blackwell ("defendant") appeals from the trial court's judgment entered on his convictions for two counts of possession with

STATE v. BLACKWELL

[228 N.C. App. 439 (2013)]

intent to sell or deliver cocaine, two counts of selling cocaine, and his guilty plea to having attained habitual felon status. After careful review, we find no error.

## Factual Background

The State presented evidence at trial tending to establish the following facts: On 22 July 2008, Detective Cathy Owens ("Detective Owens"), a detective with the Reidsville Police Department, was working undercover with a narcotics unit. She and a confidential informant drove to defendant's residence in Roxboro, North Carolina. Detective Owens met defendant inside a barn beside his house and asked to purchase $20 worth of cocaine. When Detective Owens handed over the money, defendant gave her a small plastic baggie containing a substance that appeared to be powder cocaine. After two or three minutes inside the barn, Detective Owens and the informant left the property.

Later that same day, Detective Owens spoke with defendant on the telephone about buying more cocaine. Defendant told her that instead of meeting again at his house, they should meet at Runt's Bar. Later that night, defendant sold Detective Owens $40 worth of cocaine in the parking lot of the bar.

Defendant was subsequently charged with two counts of possession with intent to sell or deliver cocaine, two counts of selling cocaine, and one count of having attained habitual felon status. At his first trial, defendant was found guilty of all the drug-related charges, and he pled guilty to being a habitual felon. On appeal, however, this Court granted defendant a new trial due to the State's failure to provide defendant with proper notice of its intent to introduce the laboratory reports documenting the results of the tests performed on the substances "sold" by defendant to Detective Owens during the controlled purchases. *See State v. Blackwell*, 207 N.C. App. 255, 699 S.E.2d 474 (2010).

On remand, the prosecutor filed and served on 7 May 2012 notice of the State's intent to use the laboratory reports. The following day, defendant's newly appointed attorney filed a motion for a continuance, requesting additional time to prepare for trial. The trial court denied defendant's motion, and the case proceeded to trial. The jury found defendant guilty of all the drug-related charges, and defendant subsequently pled guilty to having attained habitual felon status. The trial court sentenced defendant as a Class C felon to a presumptive-range term of 107 to 138 months imprisonment with credit for 603 days of prejudgment confinement. Defendant gave notice of appeal in open court.

STATE v. BLACKWELL

[228 N.C. App. 439 (2013)]

## Analysis

## I.    Jury Instruction Pursuant to N.C. Gen. Stat. § 15A-1235

[1] Defendant first contends that the trial judge coerced the jury into reaching a verdict in violation of his right to a unanimous jury verdict under Article I, Section 24 of the North Carolina Constitution. As an initial matter, we note that although defendant failed to raise this issue at trial, this argument is nonetheless preserved for appellate review. *See State v. Wilson*, 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009) ("While the failure to raise a constitutional issue at trial generally waives that issue for appeal, where the error violates the right to a unanimous jury verdict under Article I, Section 24, it is preserved for appeal without any action by counsel.") (internal citation omitted).

The jury began its deliberations in this case at 2:48 p.m. on Tuesday, 22 May 2012. Approximately 30 minutes later, the trial judge brought the jury back into the courtroom in order to discuss a note received from the jury.[1] Because the note apparently did not contain any specific request for guidance or assistance, the judge explained to the jurors that he wanted to make sure that they "understood the process" and that if they had any questions or specific requests, he "could work with [them] on th[e] matter . . . ." The jury then returned to the jury room and continued its deliberations until 3:30 p.m., at which time it sent a note requesting to review certain evidence from the trial. The jury returned to the courtroom and, after being advised that some of the evidence could be viewed in the jury room and that other evidence was not available for review, the jury went back to the jury room at 3:43 p.m.

At 3:59 p.m., approximately 70 minutes after they had begun deliberations, the jury sent a third note to the judge, stating: "What can we do if we have a verdict of 11 saying guilty but 1 that says not guilty and will not change their mind? And does not want to convince the other 11 to vote otherwise . . . ." The trial judge brought the jury back into the courtroom and provided the following instruction:

> THE COURT: Ladies and gentlemen, I received a note from you, and I'm going to read it. It does reflect that, and I'm not going to say which way that vote is going. So, I'm going to paraphrase that part. This is what you indicated to me. It says, "What can we do if we have a verdict of 11

---

1. Neither the note itself nor a description of its contents is provided in the record on appeal.

to 1, and the one will not change their mind and does not want to convince the other 11 to vote otherwise?" Um, so I understand that you do have a division among yourselves that is preventing you from reaching a unanimous verdict, and I know what we ask of you is very difficult, asking twelve people who have never met to reach a unanimous consensus on a matter such as this is a difficult task and is not common to the experience of most people.

I do want to remind you, though, that through the process of selecting you as jurors for this case, the lawyers and the court have carefully considered your qualifications to be on this jury, and while we recognize we have put great responsibility on you by selecting you to serve, we have also signified a great faith in you that you twelve citizens are well suited to hear this evidence, to listen to the arguments of counsel, to follow the law, and to render a verdict reflecting the truth.

Were this matter to be tried again, it's unlikely that we would find another group of twelve citizens to serve as jurors who would be any more capable than yourselves to reason together in this matter in an effort to reach a unanimous verdict. I want to remind you that it is your duty to do whatever you can to reach a unanimous verdict. You should reason this matter over together as reasonable men and women in an effort to reconcile your differences, if you can, without the surrender of your conscientious convictions. No juror should surrender an honest conviction as to the weight or effect of the evidence solely upon the opinion of other fellow jurors or for the mere purposes of returning a verdict, but I will ask you to return to your deliberations and continue in your efforts to reach a verdict. I'll let you know that we're going to continue. Right now you've been deliberating for a little bit over an hour, about an hour and 15 minutes. That's certainly not an unusually long time for a jury to deliberate.

I will continue until five o'clock today, and then if you're unable to reach a unanimous verdict, we'll resume tomorrow morning at 9:30. So, you have plenty of time to deliberate. Don't feel that you need to rush yourselves in this process. It's important that every view of the jury be considered, and that you deliberate in good faith among

yourselves. I'll ask you to return to your deliberations and continue this process.

At this point, the jury went back to the jury room and resumed deliberations for approximately one more hour. At 5:03 p.m., the jury announced that it had reached a unanimous verdict of guilty on each drug charge.

Defendant argues that the trial judge coerced the verdict by giving the jury an *Allen* charge[2] when the jury's note "clearly stated" that one juror would not change his or her mind. North Carolina's Criminal Procedure Act expressly provides for the use of *Allen* charges in N.C. Gen. Stat. § 15A-1235, which states in full:

(a) Before the jury retires for deliberation, the judge must give an instruction which informs the jury that in order to return a verdict, all 12 jurors must agree to a verdict of guilty or not guilty.

(b) Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(c) *If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue*

---

2. The term "*Allen* charge" is derived from the case of *Allen v. United States*, 164 U.S. 492, 501–02, 41 L.Ed. 528, 530–31 (1896), where the United States Supreme Court approved the use of jury instructions that encourage the jury to reach a verdict, if possible, after the jury has requested additional instructions from the trial court.

> *its deliberations and may give or repeat the instructions provided in subsections (a) and (b). The judge may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.*
>
> (d) If it appears that there is no reasonable possibility of agreement, the judge may declare a mistrial and discharge the jury.

N.C. Gen. Stat. § 15A-1235 (2011) (emphasis added).

Defendant fails to cite any authority suggesting that a jury's indication that it may be deadlocked requires the trial court to immediately declare a mistrial. To the contrary, "[t]he plain language of the statute provides that the trial court '*may* give or repeat the instructions provided in subsections (a) and (b).'" *State v. Fernandez*, 346 N.C. 1, 22, 484 S.E.2d 350, 363 (1997) (quoting N.C. Gen. Stat. § 15A-1235(c)) (emphasis in original).

Adoption of defendant's argument would essentially mean that any time the jury expresses difficulty in reaching a verdict, the trial court would be required to declare a mistrial. Such a rule would clearly conflict with the plain language of the statute and our caselaw interpreting it. *See id.* at 23, 484 S.E.2d at 364 (holding that trial court has discretion to reinstruct jury "in situations where the trial court perceives the jury may be deadlocked or may be having some difficulty reaching unanimity"); *see also State v. Patterson*, 332 N.C. 409, 416, 420 S.E.2d 98, 101 (1992) (holding that trial court did not coerce verdict by instructing jury pursuant to N.C. Gen. Stat. § 15A-1235 despite "clear" indication by jury that it was "hopelessly deadlocked"); *State v. Baldwin*, 141 N.C. App. 596, 609, 540 S.E.2d 815, 824 (2000) (finding no coercion where trial judge gave *Allen* charge and directed jury to continue deliberations after jury sent note to judge indicating that it was at an "'impass[e]'" and that there was "'no way'" two of the jurors would "'ever change their mind[s]'").

Defendant also argues that the trial judge's instruction was coercive because he threatened that if the jury did not reach a verdict that day (Tuesday), he would bring the jury back the next day (Wednesday) to continue deliberations. Our Supreme Court has held that "a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous." *State v. Alston*, 294 N.C. 577, 593, 243 S.E.2d 354, 364 (1978). In determining whether the trial court's instructions "forced a verdict or merely served as a catalyst for further deliberation,"

our courts consider the totality of the circumstances under which the instructions were made and the probable impact of the instructions on the jury. *Id.* at 593, 243 S.E.2d at 364–65. One relevant factor in making this determination is "whether the trial court threatened to hold the jury until it reached a verdict." *State v. Boston,* 191 N.C. App. 637, 644, 663 S.E.2d 886, 892, *appeal dismissed and disc. review denied,* 362 N.C. 683, 670 S.E.2d 566 (2008).

In *State v. Whitman,* 179 N.C. App. 657, 635 S.E.2d 906 (2006), the trial judge, after noting that it was 4:35 p.m., told the jurors that he wanted to "give [them] 'an opportunity to deliberate' " until 5:00 p.m. *Id.* at 671, 635 S.E.2d at 915. The judge also noted that he would call the jurors back into the courtroom at 5:00 p.m. if they had not reached a verdict by that time so that he could discuss with them how they wanted to continue deliberations in light of forecasted inclement weather. *Id.* at 672, 635 S.E.2d at 915. Despite the jury coming back with a verdict 18 minutes later, this Court concluded that no coercion had occurred because it "[did] not read these remarks of the trial judge, discussing practical aspects of deliberating late in the day in the face of potential inclement weather, as risking a coerced verdict." *Id.*

Here, after receiving the jury's note at approximately 4:00 p.m., the trial judge brought the jurors back into the courtroom and told them that although their note indicated that there was "a division among [them]," they had been deliberating for only approximately 75 minutes. The judge explained that he was going to have the jurors continue to deliberate for the remainder of the afternoon and that, if they needed more time, they could resume deliberations the next day. The trial judge further emphasized that the jurors should not rush themselves in the deliberation process and reminded them that it was "important that every view of the jury be considered, and that you deliberate in good faith among yourselves."

As in *Whitman,* these statements by the trial judge to the jury cannot reasonably be construed as coercive. The judge never intimated that the jury was required to reach a verdict or that it would be forced to deliberate until it had reached one. To the contrary, in a conscientious manner, the trial judge asked the jury, which had been deliberating for only 75 minutes, to continue to deliberate until 5:00 p.m. and instructed the jurors that they would resume deliberations the next morning if needed. The trial judge's statements were merely intended to apprise the jury of the practical aspects of deliberating late in the day. *See also State v. Macon,* 6 N.C. App. 245, 254, 170 S.E.2d 144, 150 (1969) (finding no coercion in statement by trial judge that if jurors did not reach verdict by 9:00 p.m. he would then discuss with them whether they wanted to continue

deliberating that night or return the next day), *aff'd*, 276 N.C. 466, 173 S.E.2d 286 (1970). Defendant's argument is, therefore, overruled.

## II. Motion for Continuance

**[2]** Defendant next argues that the trial court violated his constitutional rights to due process and effective assistance of counsel by denying his motion for a continuance. A trial court's ruling on whether to grant or deny a motion for a continuance is ordinarily reviewed under an abuse of discretion standard. *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001), *cert. denied*, 535 U.S. 934, 152 L.Ed.2d 221 (2002). When, however, the motion implicates a constitutional right, the trial court's ruling "involves a question of law which is fully reviewable by an examination of the particular circumstances of [the] case." *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). In such situations, the denial of the motion to continue warrants a new trial "only upon a showing by the defendant that the denial was erroneous and also that his case was prejudiced as a result of the error." *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982).

In order to establish a constitutional violation in this context,

> a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.

*State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 337 (1993) (internal citations and quotation marks omitted).

Defendant contends that the denial of his motion for a continuance violated his constitutional rights because (1) defense counsel had been appointed only 54 days prior to the beginning of trial; (2) defense counsel had just become aware of material witnesses that might testify favorably for defendant; and (3) the State, on the Friday before the Monday the trial was scheduled to begin, had turned over statements from the confidential informant involved in the drug purchases.

We note that this was defendant's second trial on the same charges – albeit with different attorneys representing him in the two trials. Although defense counsel in the second trial was appointed 54 days prior to trial, the underlying facts in this case are, as the State points out, fairly straightforward: "two hand to hand, face to face drug sales to

an undercover police officer." Defendant fails to explain how a period of approximately two months was insufficient time to prepare for a second trial based on the same, straightforward facts. *See State v. Bullock*, 183 N.C. App. 594, 597, 645 S.E.2d 402, 405 (holding that 56 days was a reasonable time for defense counsel – who had not represented defendant at trial – to prepare for resentencing after remand), *appeal dismissed and disc. review denied*, 361 N.C. 570, 650 S.E.2d 817 (2007); *State v. Bunch*, 106 N.C. App. 128, 132, 415 S.E.2d 375, 377 (finding no constitutional violation where "counsel had approximately 55 days to prepare for trial" in which State called only two witnesses and defendant presented no evidence), *disc. review denied*, 332 N.C. 149, 419 S.E.2d 575 (1992); *State v. Martin*, 64 N.C. App. 180, 182, 306 S.E.2d 851, 852-53 (1983) (holding that appointment of counsel "six working days" prior to trial was adequate to prepare defense in case involving "relatively simple legal and factual issues").

With respect to newly discovered witnesses, our Supreme Court has held that a continuance

> is proper if there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts. But a mere intangible hope that something helpful to a litigant may possibly turn up affords no sufficient basis for delaying a trial to a later term.

*State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (citation, quotation marks, and emphasis omitted).

Defendant fails to explain (1) why he was unable to find these witnesses in the more than three years since his indictment on these charges; and (2) why their testimony was material. *See State v. T.D.R.*, 347 N.C. 489, 504, 495 S.E.2d 700, 708-09 (1998) (finding no error when defendant failed to explain to trial court why more than three months was insufficient time to secure any necessary evidence and defendant submitted no affidavits indicating what facts might be proven by witness if continuance had been granted).

Defendant further argues that the trial court should have granted a continuance because defense counsel needed more time to review recorded witness statements by a confidential informant, which, defendant contends, were not provided by the State until the last business day before trial. The State argues on appeal, as it did before the trial court in opposing defendant's motion, that defendant already had copies of the witness statements because it was *defendant's* investigator who interviewed the witness and recorded the statements. Because the discovery

materials are not included in the record, we cannot determine with which party they originated. Nor, for the same reason, can we assess their materiality.

Defendant has, therefore, failed to establish that the trial court erred in denying his motion for a continuance based on the alleged lack of adequate time to review the materials. *See Tunstall*, 334 N.C. at 331, 432 S.E.2d at 338 (finding it "impossible . . . to determine whether additional time to review any [discovery] materials provided to the defendant on the morning [after trial began] would have benefitted the defendant" where "record d[id] not reveal what information actually was provided to the defendant"); *State v. Bearthes*, 329 N.C. 149, 158, 405 S.E.2d 170, 175 (1991) ("We hold that the trial court properly denied the defendant's motion to continue because defendant failed to show that the content of the discovery provided to the defendant two days prior to trial was of such a nature as to require additional time for the preparation of his defense.").

Ultimately, even assuming *arguendo* that the trial court erred in denying defendant's motion to continue, the "defendant still has the burden of demonstrating that he suffered prejudice as a result of any alleged error." *State v. Banks*, 210 N.C. App. 30, 47, 706 S.E.2d 807, 820 (2011). Defendant's entire argument regarding prejudice is the conclusory statement in his brief that the denial of his motion to continue "prejudiced [him] in that he was unable to put on a defense in violation of his Constitutional rights . . . ." Such conclusory and unsubstantiated assertions are insufficient to establish prejudice resulting from the denial of a motion for a continuance. *See Whitman*, 179 N.C. App. at 666-67, 635 S.E.2d at 912 (holding that defendant "failed to establish prejudice" where he made "no argument explaining . . . how his defense would have been better prepared or more persuasive had the continuance been granted"); *State v. Jones*, 172 N.C. App. 308, 312, 616 S.E.2d 15, 19 (2005) (finding no error when "defendant failed to articulate, either at trial or on appeal, how a continuance would have helped him").

In sum, defendant has failed to make any specific argument as to how he would have been better prepared at trial if his motion had been granted or how he was materially prejudiced as a result of the denial of his motion. Consequently, we conclude that the trial court did not err in denying defendant's motion for a continuance.

## III. Cruel and Unusual Punishment

[3] Defendant's final argument on appeal is that his enhanced sentence as a habitual felon constitutes cruel and unusual punishment. This exact

argument has been considered and expressly rejected by the courts of this State. *See, e.g., State v. Todd*, 313 N.C. 110, 117, 326 S.E.2d 249, 253 (1985) (rejecting "outright" the argument that "our legislature is constitutionally prohibited from enhancing punishment for habitual offenders as [a] violation[] of [the] constitutional stricture[] dealing with . . . cruel and unusual punishment"); *State v. Cummings*, 174 N.C. App. 772, 776, 622 S.E.2d 183, 185–86 (2005) (observing that "[t]his Court and the North Carolina Supreme Court have consistently rejected Eighth Amendment challenges to habitual felon sentences"), *disc. review denied*, 361 N.C. 172, 641 S.E.2d 306 (2006), *cert. denied*, 550 U.S. 963, 167 L.Ed.2d 1140 (2007).

In this case, defendant was sentenced to 107 to 138 months imprisonment not only because of the 22 July 2008 drug offenses but also due to his significant criminal history. We conclude that defendant's sentence is not unconstitutional. *See State v. Hargrave*, 198 N.C. App. 579, 589-90, 680 S.E.2d 254, 262 (2009) (holding that enhanced sentence of 120 to 153 months imprisonment as habitual felon for non-violent offenses did not violate prohibition against cruel and unusual punishment).

### Conclusion

For the reasons stated above, we find that defendant received a fair trial free from error.

NO ERROR.

Chief Judge MARTIN and Judge BRYANT concur.