STATE OF NORTH CAROLINA v. BILLY WILLIAMS CUMMINGS

No. 9220SC1306

(Filed 18 January 1994)

1. **Searches and Seizures § 109 (NCI4th)— search warrant for defendant's residence—sufficiency of affidavit to support issuance of warrant**

    An affidavit contained sufficient information to establish probable cause for issuance of a warrant to search for drugs and drug paraphernalia, although defendant contended that

STATE v. CUMMINGS

[113 N.C. App. 368 (1994)]

the affidavit falsely stated that one informant had given reliable information in the past about drug deals, where the affidavit stated that the officer applying for the search warrant had just arrived from a crime scene to which he had been taken by a confidential informant; the informant had told him exactly where he could find cocaine and had described defendant's procedure for retrieving cocaine when a buyer placed an order; the officer had instructed the informant to go and place an order from defendant, and as a result defendant's associate went down to a creek next to defendant's house to retrieve some cocaine from the hiding place; and a second informant from whom the officer had previously received information leading to arrests told the officer he had observed cocaine on defendant's premises within ninety-six hours and told the officer that additional quantities of cocaine were buried in the creek near defendant's residence.

**Am Jur 2d, Searches and Seizures § 124.**

2. **Searches and Seizures § 58 (NCI4th)— search for drugs and drug paraphernalia—seizure of pornographic photos—no error**

    The trial court did not commit reversible error by denying defendant's motion to suppress photographs of various nude women seized during a search of defendant's residence under a valid search warrant for drugs and drug paraphernalia, since the officers could properly seize the photographs because they thought they could be connected to another crime involving pornography. N.C.G.S. § 15A-253.

    **Am Jur 2d, Searches and Seizures § 161.**

3. **Evidence and Witnesses § 1569 (NCI4th)— drug trial— admission of pornographic photos seized from defendant's residence—admission as harmless error**

    Although the trial court erred in allowing into evidence at defendant's drug trial certain pornographic photos seized from defendant's residence during a lawful search, the court's error was harmless because defendant failed to show that a different result would have likely ensued at trial had the evidence been excluded.

    **Am Jur 2d, Searches and Seizures § 113.**

STATE v. CUMMINGS

[113 N.C. App. 368 (1994)]

Appeal by defendant from judgments entered 22 July 1992 by Judge James M. Webb in Richmond County Superior Court. Heard in the Court of Appeals 28 September 1993.

*Attorney General Michael F. Easley, by Assistant Attorney General David M. Parker, for the State.*

*George E. Crump, III, for defendant-appellant.*

JOHNSON, Judge.

After a trial by jury in Richmond County Superior Court, defendant Billy Williams Cummings was convicted of trafficking in cocaine by possession, intentionally keeping and maintaining a dwelling house for the use or keeping of a controlled substance, and possession of drug paraphernalia. Judge James M. Webb sentenced defendant to fifteen years incarceration and fined defendant fifty thousand dollars ($50,000.00) on the trafficking conviction. The trial judge consolidated the paraphernalia and maintaining a dwelling house convictions for sentencing, and imposed a sentence of five years incarceration to begin at the end of the trafficking sentence.

Defendant filed a motion to suppress evidence and a *voir dire* hearing was conducted at the beginning of the trial on this matter. The State presented evidence tending to show the following: On 20 June 1991, a confidential informant (hereafter, CSI #1) contacted Captain Phillip E. Sweatt, Jr., of the Richmond County Sheriff's Department. CSI #1 told Sweatt that he had personally observed a quantity of cocaine at the residence of defendant and had also observed defendant conceal cocaine just off his property. CSI #1 offered to show Sweatt where defendant had concealed the cocaine. CSI #1 said that CSI #1 had personal knowledge of defendant's drug activity; defendant had given drugs to him and to other people. CSI #1 also told Sweatt that CSI #1 knew that defendant had gone out of state and obtained cocaine and that he had seen cocaine at defendant's residence within the past twenty-four hours.

Sweatt and another officer went with CSI #1 to defendant's residence. CSI #1 took the officers to the edge of a creek one hundred to one hundred and fifty feet from defendant's house. CSI #1 told Sweatt that the cocaine was on the other side of some bushes. Sweatt walked behind the bushes and found a blue Thermos (registered trademark) bottle. Inside were plastic vials containing what appeared to be cocaine. After finding this bottle,

Sweatt placed it back on the ground. CSI #1 had explained that the procedure for buying drugs from defendant was that CSI #1 or CSI #1's sister would call defendant to order cocaine. Once the call was placed to defendant, defendant would have an associate named Cauthen (also referred to as Fly) go out to the creek bank to retrieve some cocaine from the cache stored there. Sweatt told CSI #1 to go and make a phone call and order some cocaine from defendant. CSI #1 left and shortly thereafter, Cauthen came to the bank to retrieve the bottle. Cauthen crossed the creek, reached the bottle and opened it. Sweatt and the other officer then arrested Cauthen. A few minutes later, defendant came out of his house and called to Cauthen, "Fly, come on up with that sh--" Sweatt and the other officers proceeded to defendant's residence, placed him under arrest and secured the residence. Sweatt then went to obtain a search warrant for the residence.

In his application for a search warrant, Sweatt recounted the information given to him by CSI #1 who led him to the bottle and also recounted information given to him by a second informant (hereafter, CSI #2). CSI #2 told Sweatt that he had personal knowledge of defendant's drug activity. CSI #2 also stated that he had personally seen cocaine at defendant's residence within the past ninety-six hours. CSI #2 stated that the cocaine was bagged in one-fourth gram bags and that additional ounces of cocaine were in the residence and buried in the creek by the residence. Based on the information given to him by the informants, Sweatt obtained a search warrant.

After the trial judge heard evidence from both sides, he determined that the search warrant was issued upon probable cause and concluded that none of defendant's state or federal statutory or constitutional rights were violated in the search of the premises and the seizure of property therefrom. The court denied defendant's motion to suppress the evidence.

[1] On appeal, defendant argues that the trial court erred in failing to grant defendant's motion to suppress evidence seized pursuant to the search warrant in that the search warrant was based on false information contained in the application for the search warrant. Specifically, defendant contends that the application for the search warrant stated falsely that CSI #1 was a reliable informant who had given information in the past about drug deals. We find defendant's argument meritless.

In *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed.2d 527 (1983), the U.S. Supreme Court refined the standard of review in cases where probable cause in search warrant applications is based upon an informant's tip. The Court opined:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed. (Citations omitted.)

*Id.* at 238-39, 76 L.Ed.2d at 548.

In the instant case, the officer applying for the search warrant had just arrived from a crime scene to which he had been taken by CSI #1. CSI #1 had told him exactly where he could find cocaine and had described defendant's procedure for retrieving cocaine when a buyer placed an order. The officer had instructed CSI #1 to go and place an order from defendant, and as a result, defendant's associate had gone down to the creek to retrieve some cocaine from the hiding place. In addition, CSI #2, from whom the officer had previously received information leading to arrests, told the officer he had observed cocaine on defendant's premises within ninety-six hours, and told the officer that additional quantities of cocaine were buried in the creek near defendant's residence. "It is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.' " (Citation omitted.) *Gates*, 462 U.S. at 244-45, 76 L.Ed.2d at 552.

We find there was sufficient information in the affidavit to establish probable cause that illegal drug activity and drug paraphernalia would be found on the premises to be searched. As such, we find the trial court properly denied defendant's motion to suppress the evidence.

[2] Defendant argues that the trial court committed reversible error by denying defendant's motion to suppress photographs seized

during the search of defendant's residence under a search warrant. We disagree.

The Richmond County Sheriff's Department obtained a search warrant dated 20 June 1991 in order to search the residence of defendant. The search warrant and application for the search warrant described the property to be seized as cocaine, U.S. currency, drug paraphernalia, and drug records. Pursuant to the search warrant, the Richmond County Sheriff's Department conducted a search of the residence of defendant on 20 June 1991. Ninety-four photographs of women in various stages of dress and undress were seized during the search.

North Carolina General Statutes § 15A-253 (1988) provides "[i]f in the course of the search the officer inadvertently discovers items not specified in the warrant which are subject to seizure under G.S. 15A-242, he may also take possession of the items so discovered." Items subject to seizure under North Carolina General Statutes § 15A-242 (1988) are "item[s] . . . that . . . (4) constitute[ ] evidence of an offense[.]"

The United States Supreme Court, in *Horton v. California*, 496 U.S. 128, 110 L.Ed.2d 112 (1990), abolished the inadvertence requirement when the Court stated:

It is . . . an essential predicate to any valid warrantless seizure of incriminating evidence that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. There are, moreover, two additional conditions that must be satisfied to justify the warrantless seizure. First, not only must the item be in plain view; its incriminating character must also be "immediately apparent." . . . Second, not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. (Citations omitted.)

*Id.* at 136-37, 110 L.Ed.2d at 123.

Here, officers were at defendant's residence pursuant to a valid search warrant. While searching for the various items, the officers discovered ninety-four photographs of various nude women. The officers seized the photographs because the officers "understood pornography to be a crime." Because defendant was engaged in illegal activity, it is reasonable that the officers could conclude

that the large quantity of the photographs, showing women in various stages of dress and undress, could have been connected to pornography. As such, we find the photographs were properly seized under the plain view doctrine.

[3] Defendant also argues that the trial court committed reversible error in admitting certain photographs into evidence over defendant's objections. We agree that it was error to admit the photographs into evidence, but we find no prejudicial error.

North Carolina General Statutes § 8C-1, Rule 402 (1988) states that "all relevant evidence is admissible[.] . . . Evidence which is not relevant is not admissible." North Carolina General Statutes § 8C-1, Rule 403 (1988) states "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A decision to admit evidence rests in the discretion of the court upon consideration of the facts supporting relevancy. *State v. Wortham*, 80 N.C. App. 54, 341 S.E.2d 76 (1986), *modified on other grounds*, 318 N.C. 669, 351 S.E.2d 294 (1987).

The trial court allowed into evidence thirteen of the photographs seized from defendant's residence during execution of the search warrant. These photographs were pictures of Angie Cook, a witness who testified at trial, and three other women, who did not testify at trial. The State used the photographs of Angie Cook, while she testified, to corroborate her allegations that defendant used the photographs to blackmail her from testifying. The other photographs were admitted into evidence and were not used for any purpose during the trial.

We find that the trial court properly admitted the photographs of Angie Cook as the photographs were relevant to corroborate her testimony. However, we find that the trial court erred in admitting the other photographs as they were not relevant for corroboration or identification purposes. Although we have determined that admission of some of the photographs was erroneous, the error made by the trial court was harmless error because defendant failed to show that a different result would have likely ensued at trial had the evidence been excluded. *State v. Gappins*, 320 N.C. 64, 357 S.E.2d 654 (1987). The State presented overwhelming evidence on defendant's charges of trafficking cocaine by posses-

sion, maintaining a place to keep or sell controlled substances and possession of drug paraphernalia. The State's evidence tended to show that defendant controlled the cocaine found in the creek, that defendant was involved in selling cocaine from his house, and that defendant possessed items of obvious drug paraphernalia, some of which were found to have cocaine residue on them. As such, defendant is not entitled to a reversal on this assignment of error.

We find that defendant received a trial free of prejudicial error.

No error.

Judges COZORT and McCRODDEN concur.