STATE OF NORTH CAROLINA v. KELLY M. WHITMAN, Defendant

No. COA05-1410

(Filed 17 October 2006)

## 1. Sexual Offenses— motion for bill of particulars—exact date and times of offenses

The trial court did not abuse its discretion in a statutory rape, statutory sex offense, indecent liberties with a child, and incest case by denying defendant's motion for a bill of particulars providing the exact dates and times of the alleged offenses, because: (1) defendant was provided with open-file discovery; (2) defendant has not pointed to any factual information introduced at trial that he was not provided in discovery and was necessary to prepare his defense; and (3) defendant failed to argue that the victim's testimony or any of the other evidence at trial was more specific regarding dates, times, and places than the information made available in the course of discovery.

## 2. Indictment and Information— amendment of dates—time not of the essence—failure to show inability to prepare alibi defense—failure to show prejudice for motion for continuance

The trial court did not err by allowing the State, on the first day of trial, to amend the offense dates reflected on the indictment for statutory rape and statutory sex offense from January 1998 through June 1998 to July 1998 through December 1998, and by denying defendant's subsequent motion for a continuance, because: (1) although both charges required the State to prove the victim was fifteen years of age or younger at the time of the offense, the victim did not turn sixteen until 16 February 1999 which was after both sets of dates; (2) under either version of the indictment, time was not of the essence to the State's case, and thus, the amendment did not substantially alter the charge set forth in the original indictment; (3) the amendment did not impair defendant's ability to prepare an alibi defense when he was already put on notice by the eighteen-month span covered by the incest indictment that he was going to have to address all of 1998; (4) defendant's argument that he had no reason to present an alibi defense to the incest charge based on the fact that he admitted to having incestuous sex with the victim in 2002 ignores the fact that the State's incest indictment, the jury instructions, and the ver-

STATE v. WHITMAN

[179 N.C. App. 657 (2006)]

dict sheet all required the jury to decide whether incest had occurred during the period of January 1998 through June 1999; and (5) defendant failed to establish prejudice as a result of the denial of his motion for a continuance, and the transcript reveals defendant did in fact present alibi evidence tending to show that he had few opportunities to engage in sexual activity with the victim in 1998.

### 3. Evidence— photographs—relevancy—motive

The trial court did not abuse its discretion in a statutory rape, statutory sex offense, indecent liberties with a child, and incest case by admitting two photographs into evidence that the victim took with her two younger foster girls in order to allow the State to show the victim's true motive in coming forward was concern about her sisters and not to extort money from defendant, because: (1) the fact that the victim took these photographs with her was relevant to her motives for coming forward with her allegations of sexual abuse; and (2) the photographs are not necessarily sexually suggestive, but rather could have been viewed by the jury as relatively benign.

### 4. Sexual Offenses— motion to dismiss—sufficiency of evidence—lack of physical and medical evidence—credibility

The trial court did not err in a statutory rape, statutory sex offense, indecent liberties with a child, and incest case by denying defendant's motion to dismiss the charges for alleged insufficient evidence other than the claims of the victim when there was no physical evidence and no medical evidence, because: (1) the credibility of witnesses is a matter for the jury except where the testimony is inherently incredible and in conflict with the physical conditions established by the State's own evidence; (2) defendant has pointed to nothing to suggest the victim's testimony was inherently incredible based on the laws of nature; (3) it would not have been proper for the trial court or the Court of Appeals to accept defendant's invitation to weigh the backgrounds of the victim and defendant to conclude that the victim cannot be believed; and (4) the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all of the required elements of the crimes at issue.

**5. Constitutional Law— right to fair trial—totality of circumstances—coercion of verdict—remarks about practical aspects of deliberating late in day and mentioning inclement weather—shortness of time in deliberating verdict**

The trial court did not err in a statutory rape, statutory sex offense, indecent liberties with a child, and incest case by allegedly coercing the jury into rendering a verdict by promising the jurors that they would have a day's advance notice if they would be required to stay past 5:00 p.m. and that there was a possibility of inclement weather, because: (1) the remarks of the judge discussing practical aspects of deliberating late in the day in the face of potential inclement weather did not risk a coerced verdict; and (2) although the jury returned a verdict in eighteen minutes, shortness of time in deliberating a verdict in a criminal case, in and of itself, does not constitute grounds for setting aside a verdict since it may simply reflect the nature of the evidence such as the particularly inculpatory transcript between the victim and defendant.

Appeal by defendant from judgments entered 2 February 2005 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 6 June 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Sonya M. Calloway, for the State.*

*Terry W. Alford for defendant-appellant.*

GEER, Judge.

Defendant Kelly M. Whitman appeals his convictions for statutory rape, statutory sex offense, indecent liberties with a child, and incest. On appeal, defendant primarily argues that the trial court erred by: (1) denying defendant's motion for a bill of particulars; (2) allowing the State to amend the offense dates reflected on certain indictments on the day of trial and denying defendant's subsequent motion for a continuance; (3) admitting certain photographs into evidence; (4) denying defendant's motion to dismiss the charges for insufficient evidence; and (5) coercing the jury into rendering a verdict. We disagree with each of defendant's arguments and, accordingly, find no error.

STATE v. WHITMAN

[179 N.C. App. 657 (2006)]

Facts

At trial, the State's evidence tended to show the following facts. "Mary,"[1] born in 1983, was removed from her mother's custody when she was about seven years old and placed into foster care with defendant Kelly M. Whitman, born in 1948, and his wife, Barbara Whitman. The Whitmans had fostered and adopted numerous children and continued to do so during the time Mary lived with them.

On 4 July 1997, when Mary was 14, Ms. Whitman was staying at the hospital while her father was preparing for heart surgery. Defendant and Mary remained at home, and defendant had Mary sleep with him in the Whitmans' bed. During the night, defendant pushed up against Mary and fondled her chest and between her legs while, according to Mary, "breathing really heavy." Subsequently, defendant began taking Mary on "driving lessons," during which he would fondle her chest and legs while she steered and shifted the gears.

Mary was legally adopted by the Whitmans when she was approximately 15 years old. Shortly thereafter, however, the Whitmans separated, and defendant moved into his own apartment. Although Mary initially lived with Ms. Whitman, she later moved in with defendant.

Defendant would often travel for work, and Mary occasionally went with him if she was not in school. On one such trip, after Mary had been adopted by the Whitmans, defendant gave her vodka mixed with orange juice. Apparently having drank too much, Mary began to feel sick and laid down. Defendant took off their clothes, began kissing Mary, performed oral sex on her, and ultimately had sexual intercourse with her. Defendant stopped after Mary began crying.

Defendant and Mary thereafter began having sexual intercourse about "three times a week," according to Mary. Typically, defendant gave Mary alcohol and then touched and kissed her. Whenever Mary tried to "jerk away," defendant would get mad, so Mary would then "just sit there" while defendant took off her clothes and fondled her. Defendant always performed oral sex on Mary, and, on several occasions, made her perform oral sex on him. The two would usually engage in sexual intercourse after the oral sex.

The last instance of sexual intercourse between defendant and Mary occurred in the summer of 2002, when Mary was 19 years old. Defendant had Mary accompany him on a trip to Baltimore,

---

1. For privacy purposes, the pseudonym "Mary" will be used throughout the opinion.

Maryland, and they had sex in defendant's hotel room after an evening of drinking. Mary moved out of defendant's home about a week later to move in with her boyfriend, whom she planned to marry.

Shortly thereafter, Mary spent a day helping Ms. Whitman in her duties as a substitute teacher at a local elementary school. While the children were in recess, Mary told Ms. Whitman about defendant's sexual conduct with her. Ms. Whitman confronted defendant with Mary's allegations, which, according to Mary, he ultimately admitted. Ms. Whitman testified that Mary, after yelling accusations at defendant, then asked him, in front of Ms. Whitman, "Are you denying this?" Defendant responded "[n]o," but then told Ms. Whitman, "It's not what you think."

Mary and her boyfriend were later married by Claude Spencer Chamberlain, Jr., a minister who happened to also be a detective with the Durham County Sheriff's office. After the wedding, Mary's relationship with Ms. Whitman began to deteriorate, and Ms. Whitman threatened to go to Mary's new husband and "tell him about [Mary's] past." Mary then called Detective Chamberlain because she felt she could trust him.

Detective Chamberlain, along with Sergeant William M. Oakley, III of the Durham County Sheriff's Office, interviewed Mary on 12 December 2002. Concerned about the lack of physical evidence, Sergeant Oakley obtained Mary's consent to electronically monitor and record a conversation between her and defendant, ostensibly regarding an unrelated car insurance claim. Sergeant Oakley, Detective Chamberlain, and Mary ultimately recorded three conversations between defendant and Mary. The conversations included the following excerpts:

F [Mary]: . . . I am having a lot of problems right now.

M [defendant]: huh huh

F: and I need you to help me to understand why you did this to me.

M: [Mary,] I don't know. And I wish I could explain it to you. And I wish it had never happened and I mean that from the bottom of my heart.

F: You know I was put in foster care with you guys so I could get out of being molested by everybody[.]

**STATE v. WHITMAN**

[179 N.C. App. 657 (2006)]

M: I understand that [Mary].

F: and then you

M: and I totally

F: and then you promised me you, it would never happen again and then you turn around and you do it.

M: I totally understand everything you say. I really do and there is nobody at fault at this but me.

F: Why would you make me suck your dick?

M: [Mary], you know, I can't explain that [Mary], I can't explain any of this [Mary]. I really can't.

. . . .

F: . . . [W]hat did you get out of for [sic] having sex with me for[?]

M: [Mary.]

F: For God the first time when I was like what 14?

M: Let me ask you a question [Mary.]

F: 14 until the age of 19[.]

M: Let me ask you a question. If I knew that, I would be able to answer it, do you understand that. . . .

F: You have no idea why you did that?

M: I have no idea. It was Sex [sic]. That is the only thing I can tell you. I have no idea.

F: Don't you think you have a problem?

M: No I don't think I have a problem.

F: You don't have a problem?

M: I had a problem.

F: Why[?]

M: Because it was wrong about what I did.

. . . .

F: [D]id you enjoy what you did, did you enjoy the sex, did you enjoy doing that?

M: [D]id I enjoy what?

F: [H]aving sex with me?

M: [Y]es I did [Mary]. Why would I lie to you about that, but that is not the issue. I was wrong. It is something I should have never ever done.

. . . .

F: [A] 40 and 50 year old man can not love a 13 year old and can not be in love with [a] 13 year old in a sexual way. I mean is that what you are saying it was?

M: [N]o I said when it first started [Mary] I didn't know I told you that. When it first started I don't know why. It was just sickness[.]

F: Do you remember when it started?

M: I think I remember exactly when it started. Yes I do. That is how much I think about it and how sick I get.

F: Tell me, when did it start? I want to see if you really remember. Because I know, I know the exact day, I remember[.]

M: I do too . . . .

F: I remember what was going on that time[.]

M: I think I do, I know . . . .

F: yeah[.]

M: [A]nd I am not too sure if she was in the hospital or where she was[.]

F: [Y]eah she was in the hospital with her dad who was having heart surgery[.]

M: [T]hat's right[.]

On 17 March 2003, defendant was indicted for one count each of statutory rape, statutory sex offense, incest, and indecent liberties with a child. A jury convicted defendant of each charge. At sentencing, the trial court found no aggravating factors, but found several factors in mitigation, including that defendant had been honorably discharged from the military, supported his family, had a support system in the community, and had a positive employment history. Based on these findings, the trial court entered a mitigated range sentence of 150 to 189 months imprisonment for statutory rape, followed by a

consecutive mitigated sentence of 159 to 180 months imprisonment for the remaining consolidated convictions. Defendant timely appealed to this Court.

I

[1] Defendant first argues that the trial court erred by denying his motion for a bill of particulars providing the exact dates and times of the alleged offenses. "The granting or denial of a motion for a bill of particulars is a matter soundly within the discretion of the trial court and is not subject to review except in cases of palpable and gross abuse of discretion." *State v. Garcia*, 358 N.C. 382, 390, 597 S.E.2d 724, 733 (2004), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122, 125 S. Ct. 1301 (2005).

In *Garcia*, our Supreme Court noted that N.C. Gen. Stat. § 15A-925(b) (2005) specifically requires that a motion for a bill of particulars " 'must allege that the defendant *cannot adequately prepare or conduct his defense*' " without the information requested in the motion. *Garcia*, 358 N.C. at 390, 597 S.E.2d at 732 (quoting N.C. Gen. Stat. § 15A-925(b)). The Court then found that this criteria was not met when (1) the record did not indicate any factual information later introduced at trial that was beyond defendant's knowledge and necessary to enable defendant to adequately prepare and conduct his defense, and (2) the State had provided open-file discovery. *Id.*, 597 S.E.2d at 733. *See also State v. Williams*, 355 N.C. 501, 542, 565 S.E.2d 609, 633 (2002) (open-file discovery provided defendant with all information necessary "to adequately prepare or conduct his defense"), *cert. denied*, 537 U.S. 1125, 154 L. Ed. 2d 808, 123 S. Ct. 894 (2003).

In this case, defendant sought disclosure of the exact date, place, and time that defendant was alleged to have committed each of the offenses. Defendant was, however, provided with open-file discovery. In addition, like the defendant in *Garcia*, defendant here has not pointed to any factual information introduced at trial that was not provided in discovery and was necessary to prepare his defense. He does not argue that Mary's testimony or any of the other evidence at trial was more specific regarding dates, times, and places than the information made available in the course of discovery. Defendant has, therefore, failed under *Garcia* and *Williams* to demonstrate that the trial court abused its discretion in denying the motion for a bill of particulars. *See also State v. Youngs*, 141 N.C. App. 220, 232, 540 S.E.2d 794, 802 (2000) (concluding that the trial court did not abuse its discretion in denying a motion for a bill of particulars when "[a]ll dis-

coverable information was made available to defendant," and the lack of specificity as to the sexual offenses was the result of the age of the victim at the time of the offenses and could not have been cured by a bill of particulars), *appeal dismissed and disc. review denied,* 353 N.C. 397, 547 S.E.2d 430 (2001); *State v. Hines,* 122 N.C. App. 545, 551, 471 S.E.2d 109, 113 (1996) (although denied a bill of particulars, defendant was not significantly impaired in preparation of her defense because through discovery she received enough of the requested information to adequately prepare her case), *disc. review improvidently allowed,* 345 N.C. 627, 481 S.E.2d 85 (1997).

II

**[2]** Defendant next argues that the trial court erred by allowing, on the first day of trial, the State's motion to amend the dates specified in the indictment for statutory rape and statutory sexual offense from "January 1998 through June 1998" to "July 1998 through December 1998." When time is not an essential element of the crime, "an amendment in the indictment relating to the date of the offense is permissible since the amendment would not substantially alter the charge set forth in the indictment." *State v. Campbell,* 133 N.C. App. 531, 535, 515 S.E.2d 732, 735, *disc. review denied,* 351 N.C. 111, 540 S.E.2d 370 (1999). *See also* N.C. Gen. Stat. § 15A-924(a)(4) (2005) ("Error as to a date or its omission is not ground for . . . reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice.").

The question presented by this assignment of error is whether the date of the offenses is an essential element of the crimes. In this case, both the statutory rape and the statutory sexual offense charges required that the State prove Mary was 15 years of age or younger at the time of the offense. *See* N.C. Gen. Stat. § 14-27.7A(a) (2005). Time was, therefore, essential to the State's case only insofar as Mary must have been 13, 14, or 15 when the charged offenses were committed.

Mary turned 16 on 16 February 1999. Thus, she would have been 15 both under the original dates of the indictment (January 1998 through June 1998) and under the amended dates of the indictment (July 1998 through December 1998). Consequently, under either version of the indictment, time was not of the essence to the State's case and the amendment did not, therefore, substantially alter the charge set forth in the original indictment. *See State v. McGriff,* 151 N.C. App. 631, 637-38, 566 S.E.2d 776, 780 (2002) (trial court did not err by allowing State to amend dates on indecent liberties indictment

because the expanded time frame did not " 'substantially alter the charge set forth in the indictment' " (quoting *State v. Brinson*, 337 N.C. 764, 767, 448 S.E.2d 822, 824 (1994))).

Defendant nevertheless argues that the amendment impaired his ability to prepare an alibi defense. *See Campbell*, 133 N.C. App. at 535, 515 S.E.2d at 735 (noting that amending the date of offense in an indictment may be prohibited if it deprives a defendant of the opportunity to adequately present his defense). The incest indictment, however, was never amended and charged defendant with committing incest from "January 1998 through June 1999"—an 18 month span that includes the entire 1998 calendar year. As a result, defendant was already on notice that, if he wished to present an alibi defense against charges of sexual misconduct with Mary, he was going to have to address all of 1998. Defendant's ability to prepare and present his defense was, therefore, not impaired by the trial court's decision to allow the State's motion.

We are unpersuaded by defendant's argument that because he admitted at trial to having incestuous sex with Mary in 2002, he had no reason to present an alibi defense to the incest charge. Defendant ignores the fact that the State's incest indictment, the jury instructions, and the verdict sheet all required that the jury decide whether incest had occurred during the period "January 1998 through June 1999." Defendant's admission to incest in 2002 was, therefore, immaterial, since he was not charged with committing incest during that year.

Defendant argues alternatively that the trial court erred by denying his subsequent motion for a continuance. The denial of a motion to continue will be grounds for a new trial only if the "denial was erroneous and [the defendant's] case was prejudiced as a result . . . ." *State v. Gardner*, 322 N.C. 591, 594, 369 S.E.2d 593, 596 (1988). To establish prejudice, " 'a defendant must show that he did not have ample time to confer with counsel and to investigate, prepare and present his defense. . . . To demonstrate that the time allowed was inadequate, the defendant must show how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion.' " *Williams*, 355 N.C. at 540-41, 565 S.E.2d at 632 (quoting *State v. Tunstall*, 334 N.C. 320, 329, 432 S.E.2d 331, 337 (1993)).

Here, defendant makes no argument explaining, given the incest charge, how his defense would have been better prepared or more

STATE v. WHITMAN

[179 N.C. App. 657 (2006)]

persuasive had the continuance been granted. He has, therefore, failed to establish prejudice. *See, e.g., id.* at 540, 565 S.E.2d at 632 ("Defendant has shown no evidence that the lack of additional time prejudiced his case."); *State v. Massey,* 316 N.C. 558, 573, 342 S.E.2d 811, 820 (1986) (finding no error when defendant made no serious argument how his expert's testimony "could have been more favorable or persuasive if he had been granted a continuance"); *State v. Jones,* 172 N.C. App. 308, 312, 616 S.E.2d 15, 19 (2005) (finding no error when "defendant failed to articulate, either at trial or on appeal, how a continuance would have helped him").

Moreover, our review of the trial transcript shows that defendant did in fact present alibi evidence tending to show that he had few opportunities to engage in sexual activity with Mary in 1998. Defendant offered testimony that Mary never went on any of defendant's work trips prior to the Baltimore trip in 2002, that Mary never visited defendant's residence without at least one of the other children, and that Mary did not move in with defendant until early 1999—a date after the dates alleged for the statutory rape and statutory sex offense charges.

In sum, given defendant's notice, as a result of the incest indictment, that he ought to put on an alibi defense for all of 1998, and defendant's actual ability to present a defense, we hold that the trial court's denial of defendant's motion for a continuance did not prohibit or deprive defendant of an opportunity to present a defense. *See State v. Sills,* 311 N.C. 370, 375, 317 S.E.2d 379, 382 (1984) (variance between the date alleged in the indictment and the date shown by the evidence was not prejudicial, as defendant presented alibi evidence for several days both before and after the alleged offense); *State v. Cameron,* 83 N.C. App. 69, 73, 349 S.E.2d 327, 330 (1986) (when defendant "was well aware" of time frame during which State alleged he had committed incest, defendant "was not deprived of an opportunity to prepare and present a defense as to that period of time, notwithstanding the variance in the dates thereof contained in the State's evidence"). These assignments of error are, therefore, overruled.

III

[3] Defendant next challenges the trial court's decision to admit two photographs into evidence. Both photographs were taken many years before trial, with one showing a nine-year-old foster daughter and the second showing a one- or two-year-old foster daughter. No one knew

STATE v. WHITMAN

[179 N.C. App. 657 (2006)]

who took the photographs, although they were taken with one of the Whitmans' cameras, and Mary removed them from defendant's home. Defendant argues on appeal only that the photographs were irrelevant and, in any event, unfairly prejudicial due to their debatably sexual nature.[2]

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." N.C.R. Evid. 403. "Whether the use of photographic evidence is more probative than prejudicial . . . lies within the discretion of the trial court. An abuse of discretion will be found only if the trial court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *State v. Creech*, 128 N.C. App. 592, 595-96, 495 S.E.2d 752, 755 (omission in original) (internal citation and quotation marks omitted), *disc. review denied*, 348 N.C. 285, 501 S.E.2d 921 (1998).

The State contended at a hearing on the admissibility of the photographs that the pictures were relevant to show that Mary's true motive in coming forward was "concern[] about [her] sisters" and not to extort money from defendant, as was suggested by the defense. Mary testified that "the main reason" she came forward with the allegations was the safety of the other children, and she suggested she had taken the photographs with her when she moved out in 2002 and then later turned them over to the State's attorney in order to justify her concerns.

The fact Mary took these photographs with her was relevant to her motives for coming forward with her allegations of sexual abuse, and, therefore, the photographs were admissible. *See State v. Cummings*, 113 N.C. App. 368, 374, 438 S.E.2d 453, 457 (trial court did not err by admitting photographs, seized from defendant's residence, showing witness in a state of undress to corroborate witness' claim that defendant was attempting to blackmail her to keep her from testifying at defendant's trial), *appeal dismissed and disc. review denied*, 336 N.C. 75, 445 S.E.2d 39 (1994). Further, having

2. Defendant does not make any argument as to whether the State met the proper foundational requirements for the admission of photographic evidence. *See, e.g.*, *State v. Mason*, 144 N.C. App. 20, 24-25, 550 S.E.2d 10, 14 (2001) (discussing foundational requirements for photographic evidence). We, therefore, express no opinion on the sufficiency of the State's foundation.

reviewed the photographs on appeal, we note that they are not necessarily sexually suggestive, but rather could have been viewed by the jury as relatively benign. As a result, we cannot conclude that the trial court's decision not to exclude them under Rule 403 was either "manifestly unsupported by reason" or "so arbitrary it could not have been the result of a reasoned decision." *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341, 114 S. Ct. 392 (1993). Accordingly, this assignment of error is overruled.

IV

[4] Defendant next contends that the trial court erred by denying his motion to dismiss the charges for insufficiency of the evidence. Such a motion should be denied if there is substantial evidence: (1) of each essential element of the offense charged and (2) of defendant's being the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. *Id.* at 597, 573 S.E.2d at 869. On review of a denial of a motion to dismiss, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *Id.* at 596, 573 S.E.2d at 869. Contradictions and discrepancies do not warrant dismissal of the case, but, rather, are for the jury to resolve. *Id.*

Defendant does not specifically challenge the quantum of evidence presented on any element of the crimes with which he was charged. Instead, defendant's sole argument on this issue is that, with respect to each charge, "[t]here is no evidence . . . except the claim[s] of [Mary] . . . . There is no physical evidence and no medical evidence." After detailing Mary's past sexual abuse prior to her placement with the Whitmans, her disciplinary problems, and her attempted suicide, defendant then states in his brief:

> What about [defendant]? He received an honorable discharge from the Army. He served combat duty in Vietnam. He worked with U.P.S. for 33 years before he retired. He was Chief of the Lebanon Fire Department. He had *no* criminal record.

(Citations omitted and emphasis original.) Therefore, according to defendant, the trial court "should have dismissed the charges" because "[w]ith this vast evidence against a conclusion of guilt, . . . [Mary's] testimony . . . does not rise to more than a suspicion, if even that."

STATE v. WHITMAN

[179 N.C. App. 657 (2006)]

This argument warrants little discussion. "The credibility of witnesses is a matter for the jury except where the testimony is inherently incredible and in conflict with the physical conditions established by the State's own evidence." *State v. Begley*, 72 N.C. App. 37, 43, 323 S.E.2d 56, 60 (1984). Defendant has pointed to nothing to suggest Mary's testimony was inherently incredible based on the laws of nature. *See State v. Lester*, 294 N.C. 220, 225, 240 S.E.2d 391, 396 (1978) (when sole evidence supporting the charge is "physically impossible and contrary to the laws of nature" it is "inherently incredible" and a trial court may grant defendant's motion to dismiss). It would not have been proper for the trial court—and is not proper for this Court—to accept defendant's invitation to weigh the backgrounds of the alleged victim and defendant and conclude as a matter of law that the alleged victim cannot be believed. The argument is one for the jury; it is inappropriate on appeal.[3]

It is equally well-settled that the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all the required elements of the crimes at issue. *See, e.g., id.* at 225-26, 240 S.E.2d at 396 ("The unsupported testimony of an accomplice, if believed, is sufficient to support a conviction."); *State v. Ferguson*, 105 N.C. App. 692, 696, 414 S.E.2d 769, 771 (1992) (concluding defendant was not entitled to dismissal of impaired driving charges when only police officer to testify as to defendant's actions was, according to defendant, "not credible because of lack of memory concerning the incident, missing notes, and a missing alcohol information sheet"). Because a jury was entitled to choose to believe Mary, the trial court properly denied defendant's motion to dismiss based on her testimony.

V

[5] Finally, defendant argues that the trial court erred by improperly coercing the jury to render its verdict. Every person charged with a crime has an absolute right to a fair trial and an impartial jury. *State v. Jones*, 292 N.C. 513, 521, 234 S.E.2d 555, 559 (1977). Accordingly, "a trial judge has no right to coerce a verdict, and a charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous." *State v. Holcomb*, 295 N.C. 608, 614, 247 S.E.2d 888, 892

---

3. Moreover, with respect to defendant's evidence pertaining to his good civic character, it is well-settled that when considering a motion to dismiss, "defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *Scott*, 356 N.C. at 596, 573 S.E.2d at 869.

(1978). In determining whether a trial court's actions are coercive, an appellate court must look to the totality of the circumstances. *State v. Dexter*, 151 N.C. App. 430, 433, 566 S.E.2d 493, 496, *aff'd per curiam*, 356 N.C. 604, 572 S.E.2d 782 (2002).

Defendant points to the trial judge's remarks to the jury immediately before the jurors began deliberations. After noting that it was 4:35 or 4:40 p.m., the trial judge told the jury that he was still going to give the jury "an opportunity to deliberate." He then stated:

> One of the first things I need for you to do, Mr. Foreman, is to find out what the jury wishes to do as far as how long you want to deliberate. I knew we would run into this problem. I told the members of the jury earlier that I wasn't going to request you stay past 5 o'clock unless I gave you 24 hours. So if the jury wants to do that, we'll consider that to some extent. It might be that the best position may be to see if you can reach a verdict before 5:00. And if you can't, you might want to consider coming back tomorrow. So I will bring you back at 5 o'clock, if you haven't had a decision before 5:00, so I can figure out what the jury wants to do.
>
> The other thing is, probably—let me say it now before I forget it—is that there is the possibility of some bad weather, once again, for tomorrow. And everything that I've heard is they don't expect it to be bad, which is bad, because every time they don't expect it to be bad, it gets bad; and every time they expect it to be real bad, it's never real bad. So y'all take that into consideration. But my position won't change a whole lot. If there's bad weather, we're going to follow what the schools follow, the same way we did last time. But if you haven't kept up with the weather, you just need to be aware of that.
>
> . . . .
>
> . . . . All right. Then once the Deputy gives you the sheets, you can go in the back. And don't forget, now, I'm going to bring you back at 5:00, whether you—unless you come back earlier, so we can discuss what you want to do.

In sum, the trial judge acknowledged that he had previously promised the jurors that they would have a day's advance notice if they would be required to stay past 5:00 p.m. and that there was a possibility of inclement weather. As he had on a prior day, the trial judge told the jury what he would do if the weather was bad the fol-

lowing day. He then advised the jurors that he would have them return at 5:00 p.m., if they had not reached a verdict, to discuss what they wished to do. The jurors had a choice if they were unable to reach a verdict before 5:00 p.m.: to stay later that evening or go home—potentially skip a day due to inclement weather—and then return. We do not read these remarks of the trial judge, discussing practical aspects of deliberating late in the day in the face of potential inclement weather, as risking a coerced verdict.

Defendant, however, points to the fact that the jury returned its verdict in 18 minutes as suggesting the verdict was coerced. In *State v. Spangler*, 314 N.C. 374, 378, 333 S.E.2d 722, 725 (1985), the jury returned a verdict finding the defendant guilty of first degree murder in 15 minutes. Our Supreme Court concluded that "shortness of time in deliberating a verdict in a criminal case, in and of itself, simply does not constitute grounds for setting aside a verdict." *Id.* at 388, 333 S.E.2d at 731. A jury's need for little time to reach a verdict may simply reflect the nature of the evidence, which, in this case, included a particularly inculpatory transcript between Mary and defendant. Since defendant does not point to anything else in the record suggesting that the verdict was coerced, we overrule this assignment of error as well.

No error.

Chief Judge MARTIN and Judge WYNN concur.