STATE OF NORTH CAROLINA
v.
EDDIE LEE HAIRSTON.
No. COA08-767.
Court of Appeals of North Carolina.
Filed April 21, 2009.
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Alexandra M. Hightower, for the State.
Mary March W. Exum, for defendant-appellant.
JACKSON, Judge.
Eddie Lee Hairston ("defendant") appeals from judgments entered on 11 October 2007 upon jury verdicts finding him guilty of robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and assault with a deadly weapon inflicting serious injury. For the following reasons, we hold no error.
In September 2006, George Keesee, Jr. ("Keesee") and his girlfriend Eula McCrary ("McCrary") lived together in an apartment in Winston-Salem, North Carolina. From time to time, Keesee's friend, a man named Jay, would stay with them. Shortly after midnight on 6 September 2006, Keesee and McCrary were drinking beer and playing cards together in their apartment. A man, later identified as David Bishop ("Bishop"), knocked at the door. Keesee answered, and Bishop asked whether Jay was home; Keesee replied that Jay was not home. Bishop asked whether he could use Keesee's phone. Keesee invited Bishop inside and asked him to sit down while Keesee put on his glasses and found his cell phone. As Keesee handed Bishop his cell phone, defendant knocked at the door. Keesee answered the door, but realized defendant had a shotgun, and Keesee tried to close the door. He asked for McCrary to help him close the door, but Bishop held a handgun to McCrary's head, and defendant pushed his way into the apartment.
Defendant demanded that Keesee and McCrary give him their money, but they replied that they did not have any money. Defendant hit Keesee in the head with the butt of the shotgun. Defendant and Bishop then began kicking Keesee, and before leaving, Bishop shot Keesee in the leg with the handgun.
Keesee then called the police, reported the events, and was taken to a local hospital. Several days later, the bullet fell out of Keesee's leg while he was recovering at his father's house, and Keesee gave the bullet to Detective Cox, one of the detectives responsible for investigating the events on 6 September 2006. Both McCrary and Keesee subsequently identified Bishop in a photographic lineup as one of the two men involved in the assault and attempted robbery. Keesee also identified defendant as one of the assailants.
Also in September 2006, Michael Shawn Baker ("Baker") was employed as a store manager at C&J's Bait and Tackle ("C&J's"). According to Baker's testimony, on 6 September 2006, at approximately 8:15 a.m., he was opening C&J's when Allen Wilson ("Wilson") entered the store and asked about the price of bait. After receiving an answer, Wilson left C&J's. According to Baker, Wilson soon returned wearing a mask and carrying a silver . 25 caliber handgun. Defendant also entered the store carrying a shotgun, and another, unidentified man entered with a 9mm handgun. The three men held their guns in Baker's face, and they demanded his money and the cash in C&J's register. Baker gave them the keys to the register, and they locked him in C&J's bathroom. Unable to open the register, the men broke the register and took the cash inside. After approximately ten minutes of silence, Baker left the bathroom and called the police.
Pursuant to a plea agreement, Wilson testified for the State. Wilson testified that at approximately 3:00 a.m. on 6 September 2006, he left his sister's apartment and walked to the apartment of a friend, Equay Moore ("Moore"). Wilson arrived at Moore's apartment at approximately 3:05 a.m. and joined Moore, Bishop, and defendant, who already were at Moore's. Moore and Bishop were asleep when he arrived, but he and defendant stayed up talking and watching television. At approximately 8:00 a.m., Wilson and defendant left Moore's apartment and borrowed Moore's car to go to a Bojangles restaurant to get something to eat.
The Bojangles appeared to be closed, and the two kept driving. They passed C&J's and remarked to each other as to how easy they thought it would be to rob the store. Wilson was carrying a silver.25 caliber handgun, and the shotgun used in the assault and attempted robbery of Keesee and McCrary was in the back of Moore's car. After the remarks between Wilson and defendant, defendant drove to C&J's and asked Wilson to go inside and inquire about the price of bait. After Wilson did so, he returned to the car. According to Wilson, he and defendant then robbed Baker and C&J's. Notwithstanding Baker's testimony, Wilson testified that only two men  Wilson and defendant  participated in the robbery, and that neither of them wore masks. Neither defendant nor Wilson told either Moore or Bishop about the robbery of C&J's.
Moore, Bishop, Wilson, and defendant later watched television at Moore's apartment from 10:00 p.m. until approximately midnight of 6 September 2006 or the early morning hours of 7 September 2006, at which point, they left Moore's to get something to eat. Defendant again drove Moore's car, Wilson rode in the front passenger seat, and Bishop and Moore rode in the back seat. At this point, the shotgun was in the backseat. Wilson testified that in order to make room for Bishop and Moore, he initially moved the shotgun from the backseat to the floorboard of the front seat, but he also rode with the shotgun in his lap and beside his leg at various points.
Within a few minutes, the car broke down as they were driving. Officers Best, Mattison, and Williams of the Winston-Salem Police Department arrived almost immediately. Bishop ran; Officer Mattison testified that he chased down Bishop and found him crouched behind a retaining wall at a nearby hospital. Detective Diamond testified that he found a silver .25 caliber handgun and a black semi-automatic handgun under a pile of mulch in the bushes close to where the officers found Bishop.
Detective Cox took cheek swabs of the four men to gather samples for DNA testing by the State Bureau of Investigation ("SBI"). Detective Cox also submitted the .25 caliber handgun, the bullet that fell from Keesee's leg, the shell casing from that round, and the shotgun to the SBI for firearm ballistics analysis. Firearm balistics analysts with the SBI subsequently determined that the bullet from Keesee's leg matched the silver .25 caliber handgun that was used in both the assault and attempted robbery of Keesee and McCrary. The SBI report indicated that Keesee's blood was found on the shotgun, as well on the shoes, pant leg, and shirt Wilson was wearing when he was arrested. No blood was found on either Bishop or defendant. From the evidence adduced in these proceedings, it appears that Moore was uninvolved in either the assault and attempted robbery of Keesee and McCrary or the robbery of Baker or C&J's.
During the investigation, Detective Cox also administered photographic lineups to Keesee, McCrary, and Baker. Keesee identified Bishop and defendant as the two men who entered his apartment on 6 September 2006. McCrary also identified Bishop. Keesee and McCrary subsequently were recalled to the witness stand and testified that Wilson never had been inside of their apartment and that he was not one of their assailants on 6 September 2006. Baker identified defendant as a suspect and Wilson as the man who came into C&J's asking about the price of bait.
At the beginning of the trial, counsel for the State and counsel for defendant stipulated to the authenticity of various SBI reports that were to be introduced into evidence through Detective Cox. Defendant agreed that the reports were accurate, and that no chain of custody issues existed. The first SBI report to which the parties stipulated was the SBI ballistics report that linked the bullet retrieved from Keesee's leg, a casing, and the .25 caliber handgun. The second SBI report was prepared by SBI Special Agent Jody West ("Agent West"), an SBI serologist. Agent West reported finding Keesee's blood on the shotgun and on Wilson's clothes. The third SBI report detailed the DNA analysis of the blood found on the shotgun and Wilson's clothes.
Defendant's counsel informed the trial court that the SBI agents who had prepared the reports could be made available to testify if needed, but that she did not anticipate having to call them to the witness stand. Defendant's counsel did not object to the State's proffered mode of introduction of the evidence, but stressed that she wanted to have the opportunity to cross-examine Detective Cox to "confirm and point out things in the report straight from the report just as I would with the SBI person."
During a recess on the second day of trial, counsel for the State contacted Agent West. State's counsel asked Agent West whether it was likely that Keesee's dried blood on the shotgun used in his assault during the early morning hours of 6 September 2006subsequently could transfer to Wilson's clothes prior to his arrest during the early morning hours of 7 September 2006. Agent West told State's counsel that such a transfer was unlikely, and the attorney for the State immediately contacted defendant's attorney to report the discussion. At this point, counsel for defendant sought to withdraw the previous stipulations, contended that this new information was exculpatory, and sought to compel the State to call Agent West as a witness so that defendant could cross-examine him. The State had not introduced the contested second SBI report into evidence, and stated that it did not intend to do so. The report did not discuss the ability of dried blood to transfer to other objects. The State also informed the trial court that it did not intend to call Agent West to testify.
After hearing arguments from both parties, the trial court denied defendant's motion to strike testimony properly given pursuant to the parties' stipulations relating to (1) the ballistics match of the bullet, casing, and .25 caliber handgun; (2) the DNA analysis of cheek swabs and Keesee's blood; and (3) the location of Keesee's blood on the shotgun, on Wilson's clothing, but not on anyone else's clothing. The trial court also refused to compel the State to call Agent West to testify. Defendant subsequently put on evidence by calling Agent West to testify.
After hearing all of the evidence, the jury found defendant guilty of robbery with a dangerous weapon, attempted robbery with a dangerous weapon, and assault with a deadly weapon inflicting serious injury. Defendant pled guilty to being an habitual felon with a prior record level IV, and the trial court entered judgment and commitment orders sentencing defendant within the presumptive range to two consecutive sentences of 110 to 141 months imprisonment. Defendant appeals.
On appeal, defendant first contends that the trial court erred by denying defendant's motion to strike the parties' stipulation[1] after the discovery of exculpatory evidence such that defendant purportedly was obligated to present evidence thereby forfeiting the opportunity to present the final closing argument to the jury. We disagree.
Rulings on motions to strike are within the discretion of the trial court, and are reviewed for an abuse of that discretion. See State v. Smith, 291 N.C. 505, 518, 231 S.E.2d 663, 672 (1977) ("Here the trial judge, in his discretion, denied defendants' request to strike the testimony of the witness and submitted it to the jury for consideration. The exercise of that discretion will not be disturbed on appeal absent abuse." (citation omitted)). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." State v. Hennis, 323 N.C.279, 285, 372 S.E.2d 523, 527 (1988) (citing State v. Parker, 315 N.C. 249, 258-59, 337 S.E.2d 497, 502-03 (1985)).
Our Supreme Court has instructed that "the prosecution may not suppress favorable evidence which is material to the guilt or punishment of a defendant without violating due process." State v. Call, 349 N.C. 382, 399, 508 S.E.2d 496, 507 (1998) (citing Brady v. Maryland, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218 (1963)). However, "due process and Brady are satisfied by the disclosure of the evidence at trial, so long as disclosure is made in time for the defendants to make effective use of the evidence." State v. Taylor, 344 N.C. 31, 50, 473 S.E.2d 596, 607 (1996) (citing State v. Jackson, 309 N.C. 26, 33, 305 S.E.2d 703, 710 (1983))[2].
Furthermore, Rule 10 of the General Rules of Practice for District and Superior Courts provides that a defendant who does not introduce evidence retains the right to open and close the argument to the jury. See State v. Macon, 346 N.C. 109, 112-14, 484 S.E.2d 538, 540-41 (1997); General Rules of Practice for District and Superior Courts, Rule 10.
In the case sub judice, defendant's theory is that Agent West's opinion given to State's counsel during a telephone conversation during a recess at trial such that Keesee's driedblood on the shotgun was unlikely to transfer to Wilson's clothing tended to exculpate defendant by showing Wilson to be Keesee's assailant rather than defendant. The State had no intention of calling Agent West to testify, and his opinion regarding the transferability of dried blood was not contained in his reports. When the State alerted defendant as to the potentially exculpatory evidence, defendant sought to strike testimony admitted pursuant to the stipulations of the SBI reports' accuracy, authenticity, and chain of custody of the evidence discussed therein. Defendant also sought to compel the State to call Agent West as a witness so that defendant could cross-examine Agent West and maintain the opportunity to present the final closing argument to the jury. The trial court disagreed, and the State declined to call Agent West as a witness. Defendant subsequently called Agent West as an expert witness, and now argues that he was forced to present evidence in his own defense in violation of his constitutional rights.
However, defendant fails to cite any authority for this proposition, and defendant does not argue that the State failed to present the potentially exculpatory evidence to him in a timely manner. See N.C. R. App. P. 28(b)(6) (2007).
The constitutional protection exists such that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. Here, defendant already intended to argue as a matter of common-sense that dried blood does not transfer as readily as wet blood, but wished to bolster his common-sense argument with expert testimony. Therefore, the decision to present supporting evidence from an expert witness was a tactical decision, and is distinct from the constitutionally prohibited act of compelling defendant to be a witness against himself. Although defendant lost the opportunity to make the final argument to the jury, the decision to trade the bolstering benefit of Agent West's testimony for the perceived benefit of the last argument was a strategic one, and, on these facts, does not violate defendant's constitutional protections. Furthermore, notwithstanding a bald assertion that defendant was prejudiced by the trial court's rulings, defendant fails to demonstrate any prejudice. Upon review of the record on appeal, including an exhaustive review of the transcripts from trial, we hold that the trial court did not err in its rulings on the issues addressed, supra. Defendant's first argument on appeal is without merit.
Next, defendant argues that the trial court erred in denying defendant's motion to dismiss the charges against him. We disagree.
In order to survive a motion to dismiss based upon the sufficiency of the evidence, the State must present substantial evidence of each essential element of the charged offense and of defendant's being the perpetrator of the offense. State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Blake, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (internal citations and quotation marks omitted). The court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence. Fritsch, 351 N.C. at 378-79, 526 S.E.2d at 455. "The defendant's evidence, unless favorable to the State, is not to be taken into consideration." State v. Jones, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971). "However, when it is consistent with the State's evidence, the defendant's evidence `may be used to explain or clarify that offered by the State.'" State v. Denny, 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (quotingJones, 280 N.C. at 66, 184 S.E.2d at 866).
In the case sub judice, defendant does not challenge the sufficiency of the evidence with respect to the elements of the crimes charged, but focuses instead on purportedly insufficient evidence of defendant's being the perpetrator. See Fritsch, 351 N.C. at 378, 526 S.E.2d at 455. Notwithstanding defendant's contention, the State presented evidence that (1) Keesee identified defendant as his assailant on 6 September 2006; (2) Keesee testified that defendant hit him with a shotgun and repeatedly kicked him on the floor of his apartment; (3) Keesee and McCrary both identified Bishop as one of the two men involved in the assault and attempted robbery; (4) Keesee and McCrary testified that Wilson never had been in their apartment; (5) Wilson testified that he and defendant robbed Baker and C&J's on the morning of 6 September 2006 and that defendant carried the shotgun during the robbery. Although conflicting evidence was presented,
[t]he trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witnesses' credibility. . . . It is concerned only with the sufficiency of the evidence to carry the case to the jury. . . . Ultimately, the court must decide whether a reasonable inference of defendant's guilt may be drawn from the circumstances.
State v. Thaggard, 168 N.C. App. 263, 281, 608 S.E.2d 774, 786 (2005) (internal citations and quotation marks omitted). Accordingly, we hold the trial court did not err in denying defendant's motion to dismiss the charges against him for insufficiency of the evidence.
For the foregoing reasons, we hold no error.
No error.
Judges HUNTER and ELMORE concur.
Report per Rule 30(e).
NOTES
[1] Defendant describes the contested stipulation as a "dried blood stipulation," but our review of the transcripts reveals that the relevant stipulations were limited to the accuracy, authenticity, and chain of custody as regards the three SBI reports described, supra. Nothing appears in the record to suggest that either (1) the SBI reports described the relative ability of dried blood to transfer from a shotgun to clothing or the conditions under which such a transfer may occur, or (2) the State's witnesses' testimony exceeded the scope or contravened the spirit of the parties' stipulation by postulating as to the transferability of dried blood.
[2] Defendant neither alleges nor argues that the State failed to comply with the open file discovery rules set forth in North Carolina General Statutes, sections 15A-903 and 15A-907. Therefore, we do not address those sections of the General Statutes nor judicial precedent relating to open file discovery. See, e.g., State v. Garcia, 358 N.C. 382, 390, 597 S.E.2d 724, 732-33 (2004); State v. Whitman, 179 N.C. App. 657, 664-65, 635 S.E.2d 906, 911 (2006).